## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LOUISE ANN CASTILLO,

    *Plaintiff,*

*v.*                          CASE NO. 11-CV-10292

COMMISSIONER OF             DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,           MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 9.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 25, 92.) At the hearing, Plaintiff testified that she ended her education at the eighth grade due to her parents' membership in the Mennonite church. (Tr. at 31.) Plaintiff's employment history includes work as a transporter for eight years and as a dietary aide for several months, both at a nursing/retirement home. (Tr. at 113.) Plaintiff filed the instant claim on December 20, 2006, alleging that she became unable to work on November 9, 2004. (Tr. at 92.) The claim was denied at the initial administrative stages. (Tr. at 56.) In denying Plaintiff's claim, the Commissioner considered fractures of lower limb and diabetes mellitus as possible bases for disability. (*Id.*) On January 27, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Bryan J. Bernstein, who considered the application for benefits *de novo*. (Tr. at 11-22.) In a decision dated July 29, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on August 13, 2009. (Tr. at 7-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 19, 2010, when, after the review of additional exhibits,[2] the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On January 24, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

3

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at \*4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since November 9, 2004, the alleged onset date. (Tr. at 16.) At step two, the ALJ found that Plaintiff's spinal pain, right knee problems, left ankle problems, diabetes mellitus, obesity, and carpal tunnel syndrome were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16-17.) At step four, the ALJ found that Plaintiff could not perform her past relevant work as a dietary aide or transporter. (Tr. at 21.) The ALJ also found that Plaintiff is a younger individual (49 years old), that she has a limited education, and that she is able to communicate in English. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 18-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for knee pain since 2004. On May 12, 2004, Plaintiff underwent arthroscopic surgery with Peter T. McAndrews, D.O., to repair a partial lateral meniscectomy. (Tr. at 218-19.) "Right knee shavings" examined after surgery showed "[c]artilage and synovial tissue with dystrophic calcification." (Tr. at 220.) X-rays taken of Plaintiff's right knee on March 10, 2005, showed "mild degenerative changes with apparent chondrocalcinosis." (Tr. at 192.)

Plaintiff underwent another diagnostic and arthroscopic surgery of the right knee on March 23, 2005, with Michael D. Austin, D.O. (Tr. at 169-71.) The prognosis after surgery was "good." (Tr. at 171.) Pathology from the right knee shavings showed "mild chronic inflammation." (Tr. at 191.)

Plaintiff was also treated at the St. Louis Family Clinic. Clinic notes from April 2005 indicate that Plaintiff had been diagnosed with type 2 diabetes 7 or 8 years earlier, that she had been using insulin for approximately one month, and that she had undergone two arthroscopic surgeries on her right knee. (Tr. at 146.) It was also noted that she had experienced bilateral ankle edema and was taking a low-dose water pill for the condition. (*Id.*)

Plaintiff was also treated by Michael D. Austin, D.O. In March 2005, Plaintiff underwent a diagnostic arthroscopy and meniscectomy of the right knee. (Tr. at 186-88.) On April 28, 2005, Dr. Austin noted that Plaintiff's knee was "flexing well past 90 degrees" and that she had edema worse on the right leg than on the left, but that he was "not concerned about significant degenerative changes." (Tr. at 180.) On May 26, 2005, Dr. Austin noted that Plaintiff still had "swelling bilaterally," that her knee was "relatively cool," and that "[o]ther than the individual popping it is relatively smooth" and "[t]here is no effusion." (Tr. at 179.) Dr. Austin also noted that Plaintiff's "quads seem to be coming back" and he recommended that Plaintiff "continue working on quads and gradually increase her activity[.]" (*Id.*) On July 7, 2005, Dr. Austin noted that Plaintiff had "significant quad weakness," but did "not have any warmth" or any effusion. (Tr. at 178.) On July 28, 2005, it was noted that Plaintiff had been attending physical therapy and that she was "getting some increased mobility in her knee" and was "able to bicycle now on a stationary bike there for 2 miles." (Tr. at 145.)

8

On September 1, 2005, Dr. Austin noted that Plaintiff "was helped with physical therapy" and that she "still [had] some pain if she twists her knee but for the most part there [was] no significant pain with it." (Tr. at 176.) Dr. Austin also noted that Plaintiff's "quads," "motion" and "walking" were "coming back," so he recommended that Plaintiff "increase her activity." (*Id.*) Plaintiff was discharged from physical therapy on September 2, 2005, because she had "made improvements" with strength and range of motion and was "taught a home exercise program to try on her own for the next 3-4 weeks." (Tr. at 189.)

On September 29, 2005, Dr. Austin noted that Plaintiff's knee looked "pretty good" and that the "TED hose" seemed to be helping some. Although Dr. Austin opined that Plaintiff was not ready to "go back to her regular job of being a transporter in the Masonic Home[,]" "she could do sedentary work." (Tr. at 164, 175.)

One month later on October 27, 2005, Dr. Austin noted that Plaintiff's

knee is improving some. She is still having significant trouble. I don't think that she is ever going to go back to work on her feet like she did at the Masonic Home. I do not think that she can go back to other type of work. I have okayed her to return to work November 30th. I want her off work through November 29th. I would be glad to see her at any time but I have not made a recheck appointment.

Her knee today is relatively cool. It has some minor crepitation with motion. She still has her TED hose on. She needs to wear those when she is on her feet much to keep her from swelling. She still has excessive tenderness of the knee in general but I don't think that there is much else to be done for her.

(Tr. at 163, 174.)

On July 20, 2006, Dr. Austin evaluated x-rays of Plaintiff's right knee and found "Degenerative Joint Disease with lateral joint narrowing on the standing views." (Tr. at 168.) The x-ray also showed "calcification of the medial and lateral menisci" while the "proximal-distal patellar position was normal and the Insall-Salvati 30 degrees flexion P/T ratio was 4.6/4.5." (*Id.*) On that same date, Dr. Austin opined that Plaintiff's right knee "significantly limits her activities

9

and I stand by my statement that she could not do significant stand up work. She could not do prolon[g]ed standing or walking." (Tr. at 173.) Dr. Austin stated that he "would be happy to see her again at any time" but at that time he didn't feel he had "a lot to offer her as far as treatment." (*Id.*)

On November 21, 2006, x-rays of Plaintiff's left ankle showed that the "[a]nkle mortise appear[ed] to be minimally widened laterally [which] could be due to ligamentous injury/laxity" and a "small bony density adjacent to the distal aspect of the lateral malleolus consistent with a small avulsion fracture" was again identified, but "[n]o new fractures or dislocation [were] seen." (Tr. at 157.) In addition, a "[p]lantar calcaneal bone spur is again noted." (*Id.*)

On December 5, 2006, it was noted that Plaintiff had been experiencing left ankle pain for over one month. (Tr. at 141.) Although soft tissue swelling was noted, there was "minimal tenderness over the lateral malleolus," "no significant ligamentous instability," and Plaintiff had "good muscle strength." (*Id.*)

On December 7, 2006, Dr. Austin noted that Plaintiff's "knee is somewhat cool" but "has a little bit of effusion" and "crepitation with motion." (Tr. at 172.) Dr. Austin also stated that he did not believe Plaintiff was a "candidate" to do "manual type labor on her feet" but that she "is only 46 years old and it would be possible to train her for something else." (*Id.*)

A Physical Residual Functional Capacity ("RFC") Assessment completed on January 29, 2007, concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 2 hours and sit for about 6 hours in an 8-hour workday and that she was unlimited in her ability to push or pull. (Tr. at 222.) Plaintiff was also found to be occasionally limited in all postural areas except that she was found to be frequently limited in balancing and should never climb ladders, ropes or scaffolds. (Tr. at 223.) No manipulative, visual, communicative limitations

10

were established; it was concluded that Plaintiff should avoid vibration, fumes and hazards, but was otherwise not limited in the environmental areas. (Tr. at 224-25.)

Notes from the Saginaw Valley Bone and Joint Center indicate that on November 2, 2007, Plaintiff stated that "during the summer, she was able to walk without difficulty" and that "[s]ince the weather has turned cooler, she's now riding an exercise bike for about 15 minutes several times a w[ee]k." (Tr. at 235.) Plaintiff also reported that she had "intermittent (R) knee discomfort . . . [but] denie[d] recurrent back pain, aching or cramping in the lower extremities." (*Id.*)

On April 7, 2008, an MRI of the right knee showed "joint effusion[,]" a "small Baker cyst in the politeal fossa[,]" an "[o]blique tear noted of the posterior horn of the medial meniscus[,]" and a "[h]orizontal tear noted of the anterior horn of the lateral meniscus." (Tr. at 236.)

On May 6, 2008, Plaintiff was examined at the Saginaw Valley Bone and Joint Center where radiographs were taken and interpreted, which showed "significant osteoarthritis with significant patellofemoral arthritis and lateral tibial femoral arthritis as well." (Tr. at 229.) It was concluded that Plaintiff would not benefit from another arthroscopy, so Plaintiff was "advised of the option for knee replacement." (Tr. at 230.)

On July 9, 2008, it was noted that Plaintiff "experienced a repeat fall in January 2008[,]" that her pain has increased and that an x-ray taken on June 26, 2008, showed "mild separation of the sacrum and coccyx" and "a little less anterior subluxation than on the previous x-ray" of December 13, 2007. (Tr. at 238, 239-40.)

On November 24, 2008, Plaintiff was examined by Gavin Awerbuch, M.D., who noted that Plaintiff's "EMG did confirm carpal tunnel" and that her "right knee x-ray showed degenerative change and osteoarthritis." (Tr. at 256, 257-60.) Dr. Awerbuch also opined that Plaintiff's "lumbar spine x-rays also showed degenerative changes as well as SI joint arthritis[,]" but her "wrist x-rays

were negative[.]" (*Id.*) Dr. Awerbuch also diagnosed "cervical degenerative disc disease," but he did not mention if he relied on any x-rays or other objective data in making that conclusion. (*Id.*) Dr. Awerbuch "encouraged [Plaintiff] to wear wrist and elbow supports" and noted that they "discussed injections, physical therapy, and possible surgical options." (*Id.*)

On January 12, 2009, Plaintiff underwent a sleep apnea test. She was diagnosed with obstructive sleep apnea, sleep related breathing disorder, and poor sleep architecture, and was advised to use nasal CPAP titration, specifically, to "use Cflex at home at the above pressure setting" of 7 cm of water pressure. (Tr. at 253-55.)

Plaintiff indicated in her Daily Activity Report that she does laundry three times a week, shops at the store and is able to walk for 45 minutes to an hour before her knee starts to hurt. (Tr. at 122.) Plaintiff also indicated that she cares for her dog, has no problems with doing her own personal care, does not need reminders, prepares meals, sweeps, dusts, cleans bathrooms, takes short walks, drives and rides in a car, watches television, does puzzles, crochets, and visits with people on the phone and in person. (Tr. at 123-26.) Plaintiff candidly stated that she "didn't have a social life before. Just going to work when I did work." (Tr. at 127.)

Plaintiff testified that she "reads the whole paper except for sports and the comics." (Tr. at 40.) She also stated that she has not looked for work because she "didn't think [she] could handle it." (Tr. at 41.) Plaintiff indicated that it was her knee and her back that prevent her from working. (Tr. at 40-41.) Plaintiff stated that she vacuums with an upright vacuum, cooks soups and sandwiches, and shops for groceries. (Tr. at 44-46.) Plaintiff also testified that there are 14 steps in her home that she must climb to get to her bedroom. (Tr. at 47.) Plaintiff stated that in order to appease her back and knee pain, she sits in her recliner with a pillow and the footrest up. (Tr. at

50.) Plaintiff indicated that she can lift a gallon of milk or a two-liter bottle of pop and that she wears splints at night for carpal tunnel, but no surgery has been recommended. (Tr. at 52.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who

> would require the option to sit or stand while working. While the impairments would prevent this person from standing and walking longer than 50 percent of an 8 hour workday and that's to say that there would be as much sitting as there would be standing or walking at least. This person cannot reach extreme postures, stooping, and kneeling, and bending more often than occasionally. And this person can lift and carry as much as 20 pounds occasionally and 10 pounds frequently with, within the constraints already, that I've already asserted. Would this set of limitations prevent the claimant from performing her past relevant work?

(Tr. at 52-53.) The VE responded that such a person would be prevented from performing Plaintiff's past relevant work. (Tr. at 53.) However, the VE further testified that such a person could perform light, unskilled, jobs with a sit/stand option available in the lower peninsula of Michigan, such as the 5,000 bench assembly jobs, the 1,600 environment inspector jobs, the 650 surveillance system monitor jobs, and the 2,600 information clerk jobs. (Tr. at 53-54.)

## F.     Analysis and Conclusions

## 1.     Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 18-21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

13

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2.      Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility and the medical records which led the ALJ to form an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Doc. 8 at 6-16.) Plaintiff also contends that the ALJ did not give proper weight to her treating physician, Dr. Austin. (*Id*. at 12-15.)

### a.      Credibility Determination

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379

(6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a),

"[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence," S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I suggest that substantial evidence supports the ALJ's credibility finding. The ALJ considered the appropriate factors and found that Plaintiff was "generally credible." (Tr. at 17.) The only aspects the ALJ found to be "not entirely credible" were Plaintiff's alleged inability to bend and kneel, inability to lift more than a gallon of milk, her claim that she falls asleep easily during the day due to sleep apnea, and her assertion that she needs to elevate her leg. (Tr. at 18.) The ALJ also found that the RFC assessment missed the mark as to several findings because the findings were unsupported by both the Plaintiff and the objective medical evidence. (Tr. at 18-19.) I suggest that the ALJ's hypothetical was supported by substantial evidence in accord with these findings.

16

There is little mention of Plaintiff's diabetes as it appears to be well-controlled with medication. Although Plaintiff certainly has osteoarthritis in her right knee and has some loss of functional capacity , she has ambulated without assistance and has been encouraged by her treating physicians to remain active.  On November 2, 2007, Plaintiff reported that "during the summer, she was able to walk without difficulty" and that "[s]ince the weather turned cooler, she's now riding an exercise bike for about 15 minutes several times a w[ee]k." (Tr. at 235.) Plaintiff also reported that she had only "intermittent (R) knee discomfort" and completely "[d]enies recurrent back pain, aching or cramping in the lower extremities." (*Id.*) In addition, Plaintiff's treatment was conservative, i.e., prescription pain medication, physical therapy, and recommendations that Plaintiff increase her activity. No doctor recommended or even mentioned surgery until November 24, 2008, when Dr. Awerbuch suggested surgery as possibility along with injections and physical therapy. (Tr. at 256.) I suggest that such modest treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007).

Finally, Plaintiff's own testimony established that she is able to perform functions that are inconsistent with total disability, i.e., that she does laundry three times a week, vacuums, cooks, is able to traverse the 14 steps to her bedroom, shops at the store and is able to walk for 45 minutes to an hour before her knee starts to hurt. She also cares for her dog, has no problems doing her own personal care, does not need reminders, prepares meals, sweeps, dusts, cleans bathrooms, takes short walks, drives and rides in a car, watches television, does puzzles, crochets, and visits with people on the phone and in person. (Tr. at 41-52, 122-26); *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  I therefore suggest that the ALJ's credibility finding is supported by substantial evidence.

### b.    Treating Physician

I note at the outset that to the extent that Dr. Austin opined that Plaintiff could not perform any work, such a conclusion is not entitled to controlling weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008).

The next question is whether the ALJ's decision to give Dr. Austin's opinion less than controlling weight was made in accordance with the required findings and is supported by substantial evidence.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not

inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544.

When an ALJ "fail[s] to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). This rule applies when the treating source opinion is a *medical* opinion; however, "[w]hen a treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work'– the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492-93 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d), 1527(e), 416.927(e); Soc. Sec. Ruling 96-5p; and *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the

19

claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In the instant case, the ALJ expressly stated that his RFC findings were inconsistent with some of those made in the RFC assessment and were "consistent" with Dr. Austin's opinion that Plaintiff could not do prolonged standing, walking, significant stand-up work, or manual-type labor. (Tr. at 19, 52-53.) As noted above, the ALJ's hypothetical required that the person not be required to stand or walk longer than 50 percent of an 8 hour workday. (Tr. at 52-53.) Even Dr. Austin opined that Plaintiff could not "go back to her regular job of being a transporter in the Masonic Home[,]" but that "she could do sedentary work." (Tr. at 164, 175.) His comment one month later that she could not "go back to any other type of work" appears to be an anomaly since there was no change in Plaintiff's medical condition during that one-month period. (Tr. at 163,

20

174.) I therefore suggest that any deviation from Dr. Austin's opinion was supported by substantial evidence.

### 3.   Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: February 7, 2012                      United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: February 7, 2012                   By____s/Patricia T. Morris_____
                                             Law Clerk to Magistrate Judge Binder